The plaintiff in this case is a realtor conducting his business in the city of Baton Rouge and in the Parish of East Baton Rouge. In the month of February, 1941, he bought a tract of land containing 76.09 acres in the Sixth Ward of that parish for the purpose of subdividing and plotting it into streets, squares and lots for the uniform and systematic development of same as residential home sites. He called it "Walnut Hills."
In order to carry out his purpose he promulgated and established certain building restrictions and had the same recorded in the conveyance records of the parish and, as he sold each lot, the purchaser acquired the same with full knowledge of the said restrictions which usually were incorporated in his deed, and he agreed to be bound by the same in constructing a home on the property he bought.
Under restriction No. 3 it is provided that "no building shall be erected, placed or altered, on any building plot in this subdivision until the building plans, specifications, and plot plans, showing the location of such building, have been approved in writing, as to conformity and external design with existing structures of the subdivision, and as to location of the building with respect to topography and finished ground elevation, by the affiant and owner, John H. Ramsey * * *."
Under restriction No. 5 it is provided that where the lots sold measured 70 feet or more in width but less than 160 feet in depth, every part of any single family residence, including the steps adjacent thereto could not be built "nearer than 25 feet to the front line of said lot, nor at a greater distance than 40 feet from the front line of the said lot * * *."
In his petition plaintiff alleges that on June 14, 1945, by act of sale recorded on June 18, 1945, he sold to the defendant herein, John B.L. Fontenot, a certain lot in his subdivision measuring 75 feet front on a street called Ramsey Drive by a depth of 125 feet; that on the date of the sale all of the building restrictions established by him were in force and effect and the property sold to the defendant was subject thereto and that the act of sale itself provided that the property was sold and acquired subject to the said restrictions.
He then alleges that on or about September 17, 1947, the defendant, through his agents, employees and contractors, commenced the construction of a residence on the property he had acquired, in violation of the building restrictions established and particularly in violation of restriction No. 3 with reference to the plans and specifications of the building having to be submitted to him and in further violation of restriction No. 5 with reference to the *Page 862 
location of the building on the building site at a given distance from the front line of the property. He avers that he first became aware of the construction of the building on September 21, 1947 and that on that day he communicated with the defendant by telephone directing his attention to the restrictions and requested that he submit his building plans in accordance with the same; that on that afternoon the defendant called at his residence, submitted certain building plans of a proposed construction which had already been commenced, after which he advised him that they were not acceptable and that his written approval would not be given at that time, all as required in restriction No. 3. He alleges further that although he offered to consult an architect himself with reference to said plans, with a view of changing and altering same in a manner that would be acceptable to him, the defendant failed to co-operate with him and continued the construction of the building.
Further, in addition to his charge of violation of restriction No. 3, as above stated, plaintiff alleged a violation of restriction No. 5 in that defendant also caused a part of the building to be constructed nearer the front property line than 25 feet.
He then sets out in detail, the remaining ownership of some 85 lots in the subdivision, the sale of which would be greatly affected if the defendant be permitted to continue the construction and erection of his residence in violation of the restrictions established by him and that he has no adequate remedy at law to protect his rights and property and that a writ of injunction is necessary in the premises; that a temporary restraining order should issue for the reason that a hearing on the matter and a decision could not be rendered in due course, to prevent him from suffering irreparable injury, loss and damage as a result of the defendant's violation and continued violation of the said restrictions.
The prayer of his petition is for a rule nisi asking that the defendant be made to show cause on a certain day why he and his agents and employees "should not be restrained, prohibited and enjoined from proceeding further with the construction and erection of the residence or building which he or they have commenced on the lot or parcel of ground * * * owned by him and from violating the building restrictions imposed upon and affecting said property until compliance with the building restrictions applicable thereto, particularly restrictions No. 3 and No. 5 has has been made — or upon failure to comply with said building restrictions, particularly No. 3 and No. 5, he the said John B.L. Fontenot, his agents, employees and contractors should not be ordered and directed to demolish and remove said residence or building which he or they have commenced to construct and erect on the above described property."
The petition for the injunction as prayed for was filed October 20, 1947 and on the following day the district judge granted a temporary restraining order and at the same time issued a rule nisi on the defendant which was made returnable at 10:30 o'clock a.m. on October 27, 1947.
For return to the rule, the defendant appeared and filed an exception of vagueness on the ground that the petition for injunction did not allege why and in what detail and manner the plans and specifications alleged to have been submitted by him to the plaintiff were not acceptable, nor did it state why the written approval could not be given at the time, and further that the petition does not state what changes or alterations in such plans would have been acceptable to the plaintiff in order to obtain his written approval. Further that the petition does not allege in what manner the residence does not conform with existing structures nor does it state in what manner the residence should have been placed upon the lot in order to conform with the same. Also on the same day defendant filed a plea of laches and estoppel on the ground that plaintiff had waited too long to commence this suit from the time he had actual knowledge as to the nature of the residence to be constructed and from the date of the actual beginning of the work on the residence *Page 863 
itself. On the same day also the defendant filed an exception of no right of action and of no cause of action and also a motion to dissolve the temporary restraining order. The motion to dissolve was based on failure of plaintiff to have complied with several provisions of the statute under which restraining orders can be obtained and on the further ground that immediate and irreparable injury would not and could not result to the plaintiff as the plaintiff had already suffered such injury or loss, or damage as he claims, before this suit was filed and would continue to suffer the same unless and until the demolition of the said building was ordered, and this, the temporary restraining order did not direct in any way.
On the same day that the rule was made returnable, some seventeen owners of lots in the subdivision intervened in the suit, joining the plaintiff in his demands.
The motion to dissolve the temporary restraining order was heard and tried on the day that it had been fixed and was dissolved and set aside, judgment to that effect having been signed the same day, in open court. Thereafter, on October 28, 1947, the plaintiff, by supplemental petition, obtained another restraining order from another judge of the district court of the parish. That order was continued in effect from time to time and in the meantime some additional property owners intervened on plaintiff's side in the suit.
On November 3, 1947, in answer to the last rule issued against him, the defendant appeared and again moved to dissolve the temporary restraining order on the same grounds heretofore urged by him. The temporary restraining order expired again from time to time and was extended until December 18, 1947. Finally the matter was brought to trial on the return to the rule filed on behalf of the defendant in which again the same pleas and exceptions were advanced. The rule was heard on January 5, 1948 and testimony taken during several of the following days and on January 27, 1948 the district judge, in a written opinion, ordered the restraining order to be dissolved and denied the application for a preliminary injunction. The appeal made to this court is from the judgment so rendered and signed.
A great deal of time and effort was devoted to a discussion of the legality of building restrictions such as plaintiff has promulgated for his home-building site and of their reasonableness, but that does not seem to be questioned by the defendant in this case. The only issue is whether there has been a violation, as charged in plaintiff's petition, of restriction No. 3 and restriction No. 5.
Plaintiff seems to have been given free rein by the district judge in presenting all the testimony he cared to, and still we do not find where he has answered the one and only question that is paramount and that is in what way and in what manner has this defendant failed to comply with restriction No. 3 which, as we view it, is the only violation of any restriction he is now charged with. Restriction No. 5 has to do with the distance the building was to be constructed from the front line or rear line of the property and, as it appeared, after the foundation for the building had been laid that the steps would encroach upon the 25 foot-length from the front line, defendant at once corrected that feature by changing the steps from the front of the entrance porch to the side, thus complying with the restriction in that respect.
With regard to restriction No. 3, plaintiff has yet to answer counsel for the defendant, and the court itself which questioned him quite frequently on the subject, in what manner or in what respect the building failed to conform in its external design with existing structures in the subdivision. It is rather significant that several of his own expert witnesses, trained men in that field, according to him, testified after looking at a photograph of the proposed residence, or of the residence itself, and comparing it with pictures of another residence, that it did conform and most of them found it to be a rather attractive building in its class.
As far as plaintiff's complaint that the defendant violated the restriction by having *Page 864 
failed to submit his plans to him for his approval, there is, in the first place, a question of fact presented. Plaintiff finally had to admit that defendant did submit a picture of the home he contemplated building with the floor plan laid out, and as we read the page of the pamphlet from which this picture was taken there was sufficient information to acquaint the plaintiff with the sort of house it was going to be. Moreover, it seems to us that a picture of the house as shown, conveyed a better impression especially as to external design, to him, than would have a lot of blue prints containing building plans and details of construction, along with other specifications. Besides, there is no reason to disbelieve the defendant's testimony, that on the day these plans were submitted to him, plaintiff seemed to be satisfied and raised no objection whatever to them. In fact for several days thereafter he never uttered a word of objection and finally when pressed by the defendant for permission to start the construction of his building, which he says was urgent because it was to be the home of his daughter in law who was to give birth to a child in the month of December, he says that plaintiff finally told him to go ahead. There appears to have been some objection on his part to the asbestos siding which was to be used on the building. In order to please the plaintiff on this point, defendant went to a good bit of trouble to obtain cypress weatherboard siding which he did, and for which he had to pay $137 over and above the contract price for his house with asbestos siding.
Plaintiff stresses the point about plans which he says he had his architect make in order to revise the exterior appearance of the house to make it conform with the other structures but he never submitted these plans to the defendant in spite of frequent requests for same. In testifying, he repeatedly charges defendant with having purposely rushed the work on his house in his effort to purposely violate the restriction and yet he has not to this date shown him the revised plans which he says would have suited him. Why he did not avail himself sooner than he did, of the only recourse he had to stop defendant, by applying to the court for an injunction, has never been satisfactorily explained.
Plaintiff also stresses the point that restriction No. 3 called for his approval in writing of the plans he had submitted but in this connection it is significant to note that he himself testified that he had "lots of times" before permitting others to build on verbal approval and why he should now be insisting that in this case there should have been strict compliance in writing, we cannot understand.
What we have said so far forms the sum and substance of this case. In his dilemma at not being able to tell the court in what manner he considered the restrictions had been violated by the defendant, plaintiff finally admitted that nothing short of an entire demolition of the building or its removal by the defendant to some other property would satisfy him. But this of course he did not ask the court to order defendant to do, and obviously the court itself could and would grant him no such relief.
[1-3] In as much as the temporary restraining order was dissolved and a preliminary injunction denied by the judgment of the lower court, defendant resumed work on the construction of his house which, we understand, has long since been completed. His counsel now raise the point that since there is no more construction left to be done, a court order restraining further construction would be an idle and a futile gesture. In other words, they contend that there is only a moot question left which the court is not interested in since "courts will not decide moot or abstract questions of law." It is also the law, they urge, that "rights already lost and wrongs already perpetrated cannot be corrected by injunction." We are strongly inclined to agree with counsel and believe that this appeal might properly be disposed of on that point. See Kean's, Inc. v. Willoughby, La. App., 149 So. 237; Forrest v. Messenger, La. App., 20 So.2d 766. However, as our consideration of the record has otherwise led us to the conclusion reached that the judgment of the lower court is correct and *Page 865 
should be affirmed, we prefer to pass on the issues involved in the case and have decided to dispose of them on their merits.
For the reasons stated, the judgment appealed from is affirmed at the costs of the plaintiff, appellant herein.